# United States Court of Appeals

## For the Eighth Circuit

_____

No. 22-2021

_____

Louis Naes

*Plaintiff - Appellant*

v.

City of St. Louis, Missouri; Angela Coonce, Major, in her individual and official capacities; John Hayden, Chief, in his official and individual capacities

*Defendants – Appellees*

------------------------------

United States

*Amicus on Behalf of Appellant(s)*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: February 16, 2023
Filed: June 14, 2023
[Unpublished]

_____

Before SMITH, Chief Judge, STRAS and KOBES, Circuit Judges.

_____

PER CURIAM.

Louis Naes is a police officer for the City of St. Louis. Naes was initially assigned to the Nuisance Unit as an Animal Abuse Investigator. Five years into Naes's tenure, Police Chief John Hayden appointed Major Angela Coonce to oversee the Nuisance Unit. Two weeks later, Coonce transferred Naes out of the Nuisance Unit to a patrol position and replaced him with a gay officer. Naes alleged that Coonce openly favors gay officers and transferred him because he is straight. Naes sued the City for sexual orientation discrimination under Title VII, the Missouri Human Rights Act (MHRA), and the Equal Protection Clause.

The district court[1] initially granted summary judgment to the City on the MHRA and equal protection claims, but denied summary judgment on the Title VII claim. But then we decided Muldrow v. City of St. Louis, 30 F.4th 680 (8th Cir. 2022), petition for cert. filed, 91 U.S.L.W. 3041 (U.S. Aug. 29, 2022) (No. 22-193), and the City moved for the district court to reconsider its Title VII decision. In light of Muldrow, the district court granted summary judgment to the City. Naes appeals the district court's judgment on the Title VII, MHRA, and equal protection claims.

We review the grant of summary judgment *de novo*. Recio v. Creighton Univ., 521 F.3d 934, 938 (8th Cir. 2008). Summary judgment should be granted if the City can show that there is "no genuine dispute as to any material fact" and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

Naes presents no direct evidence of discrimination, so we apply the McDonnell Douglas burden-shifting framework to the Title VII, MHRA, and equal protection claims. See Singletary v. Mo. Dep't of Corr., 423 F.3d 886, 891 n.4 (8th Cir. 2005) (Title VII); Button v. Dakota, Minn. & E. R.R. Corp., 963 F.3d 824, 831 n.5 (8th Cir. 2020) (MHRA); Lockridge v. Bd. of Trs. of Univ. of Ark., 315 F.3d 1005, 1010 (8th Cir. 2003) (en banc) (equal protection). To establish his prima facie case of discrimination under McDonnell Douglas, Naes must prove that he suffered

---

[1]The Honorable Sarah E. Pitlyk, United States District Judge for the Eastern District of Missouri.

an adverse employment action.  Hager v. Ark. Dep't of Health, 735 F.3d 1009, 1014 (8th Cir. 2013).

We first turn to whether—after Muldrow—Naes can demonstrate an adverse employment action.  In Muldrow, a sergeant was transferred within the St. Louis Police Department.    30 F.4th at 684.    Her transfer resulted in changed responsibilities, working non-standard hours, and losing out on her previous overtime opportunities.  Id. at 685.  But after the transfer, the sergeant's salary, rank, and potential for promotion remained the same.  Id. at 688, 690.  We held that "[a]n adverse employment action is a tangible change in working conditions that produces a material employment disadvantage."   Id. at 688 (citation omitted).  And absent proof of harm, we determined that the sergeant's transfer was not a sufficient adverse employment action.  Id.

Naes's circumstances are nearly identical to those in Muldrow.  After his transfer, Naes went from investigating specialized cases to working as a patrol officer.  His work schedule changed from a standard schedule to rotating day and night shifts.  And he was no longer able to take advantage of the same overtime opportunities.   Still, after the transfer, Naes's salary, rank, and potential for promotion did not change.[2]

Naes does not sufficiently distinguish his transfer from that in Muldrow.  We are bound to follow Muldrow and conclude that Naes did not suffer an adverse employment action.  See generally Mader v. United States, 654 F.3d 794, 800 (8th Cir. 2011) (en banc) ("It is a cardinal rule in our circuit that one panel is bound by

---

[2]To the extent that Naes claims there were other minor changes to his position, they are insufficient to support an adverse employment action.  Jackman v. Fifth Jud. Dist. Dep't of Corr. Servs., 728 F.3d 800, 804 (8th Cir. 2013) ("[M]inor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage, do not rise to the level of an adverse employment action.").

the decision of a prior panel." (citation omitted)). The district court properly granted summary judgment to the City on Naes's Title VII claim.

Naes's inability to show an adverse employment action also forecloses any possible MHRA and equal protection claims. As a threshold matter, we doubt the viability of these claims. The Missouri Supreme Court has not extended the MHRA to claims of sexual orientation discrimination. See Lampley v. Mo. Comm'n on Hum. Rts., 570 S.W.3d 16, 24–25 (Mo. banc 2019). We decline to speculate if it would do so after Bostock v. Clayton County, 140 S. Ct. 1731 (2020). And we have not extended Bostock to equal protection claims. Even if Naes could overcome this hurdle, he cannot demonstrate an adverse employment action necessary to establish a prima facie case of sex discrimination under the MHRA or the Equal Protection Clause.

Naes's Title VII, MHRA, and equal protection claims fail, and we affirm.

STRAS, Circuit Judge, concurring.

Everyone misses things, even judges. Although I joined *Muldrow v. City of St. Louis*, 30 F.4th 680 (8th Cir. 2022), I now have my doubts about whether it was correctly decided. *See South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080, 2100 (2018) (Thomas, J., concurring) (stating that "it is never too late 'to surrende[r] former views to a better[-]considered position'" (quoting *McGrath v. Kristensen*, 340 U.S. 162, 178 (1950) (Jackson, J., concurring))).

*Muldrow* applied a rule we adopted long ago: employees cannot sue under Title VII without first suffering an "adverse employment action." 30 F.4th at 688 (requiring the adverse action to be "material" (citation omitted)). I do not doubt that this requirement makes sense: disagreements over minor "[c]hanges in duties or working conditions" are probably best left to human-resources departments. *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994). The problem, however, is that those words do not appear in Title VII's text, which asks

only whether the plaintiff was "discriminate[d] against . . . with respect to his compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1). Both here and in *Muldrow*, the answer appears to be yes: transferring an employee from a plum assignment with regular hours to a job with worse hours and less-important responsibilities alters the "terms, conditions, or privileges of employment," whether or not it involves a change in rank or salary. *Id.*

Despite my reservations, however, I am still bound by *Muldrow* and the other adverse-employment-action cases that came before it. So I concur in the court's opinion, which is a faithful application of precedent.

_____